No. 13038

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

CARMIE R. DUFFY and D. COSETTE DUFFY,

Plaintiffs and Appellants,

-vs-

BUTTE TEACHERS' UNION, NUMBER 332, AFL-CIO;
MIKE McCARTHY; EDWARD HEARD; MONTANA PHYSICIANS'
SERVICE, a corporation; GIL HOXMER; SCHOOL DISTRICT
NUMBER ONE OF SILVER BOW COUNTY, MONTANA, a political
subdivision of the State of Montana and body public
and corporate; BOARD OF TRUSTEES OF SCHOOL DISTRICT
NUMBER ONE OF SILVER BOW COUNTY, MONTANA;

Defendants and Respondents.

---

Appeal from:   District Court of the Second Judicial District,
               Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Poore, McKenzie, Roth, Robischon and Robinson,
        Allen R. McKenzie argued, Butte, Montana

    For Respondents:

        Henningsen, Purcell & Genzberger, Butte, Montana
        Robert McCarthy argued, Butte, Montana
        Hughes, Bennett & Cain, Helena, Montana
        Alan F. Cain argued, Helena, Montana
        John G. Winston, County Attorney, Butte, Montana
        John J. Parker, Deputy County Attorney, argued,
         Butte, Montana

---

Submitted:  September 22, 1975

Decided:  OCT 31 1975

Filed:  OCT 31 1975

*Thomas J. Kearney*
                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment that granted all defendants' motions to dismiss for failure to state a claim upon which relief could be granted, without leave to refile.

Plaintiffs filed their original complaint in the district court, Lewis and Clark County, September 23, 1974, against all defendants except School District Number One of Silver Bow County, Montana and its Board of Trustees. The complaint charges defendants with conspiracy to violate certain rights of plaintiffs. Consolidated motions asking for (a) a change of venue, (b) dismissal for failure to state a claim upon which relief can be granted, and (c) a more definite statement as to the conspiracy, together with accompanying briefs, were filed by defendants. The venue was changed to the Second Judicial District, Silver Bow County, whereupon plaintiffs disqualified both district judges of the Second Judicial District. Judge W. W. Lessley, Thirteenth Judicial District, assumed jurisdiction.

An amended complaint was filed by plaintiffs which added defendants School District Number One of Silver Bow County and the Board of Trustees of School District Number One, Silver Bow County. Defendants, in turn, amended their briefs in support of the motion to dismiss. All motions were heard by the court.

On April 22, 1975, the district court entered an order and judgment which granted the motions to dismiss for failure to state a claim upon which relief can be granted, to all defendants. This appeal is from that judgment.

The amended complaint pleads the corporate capacity of Montana Physicians' Service (MPS); the position of the defendant Butte Teachers' Union Number 332, AFL-CIO (Union), as representing teachers employed by School District Number One of Silver Bow County (School District); and the position of Edward Heard and

Mike McCarthy as officers of said Union. Defendant Gil Hoxmer is an agent of Montana Physicians' Service. Plaintiffs are not members of the Union. Pro forma allegations are included with respect to School District Number One of Silver Bow County and its Board of Trustees.

It alleges that for a number of years contracts existed between the Union and MPS providing group medical, surgical and hospital benefits and that pursuant to these contracts the School District made contributions to MPS at its Helena, Montana offices on behalf of all teachers. That contributions were made on behalf of plaintiffs, who are not members of said Union, to MPS and that benefits were provided to plaintiffs in accordance with the contract between the Union and MPS at rates identical to those established for all teachers.

Further that after September 1972, the Union directed MPS to maintain separate charge histories for nonunion teachers and union teachers. That prior to September 1973, the nonunion teachers "were advised" that they would be separated and segregated from the union teachers for health insurance purposes and that they would have to secure their own insurance.

Plaintiffs chose to join a group composed of school district administrators and other nonunion teachers. The health insurance rates for the union group was $39.99 per month and for the administrator nonunion group was $47.65, for identical coverage. The School District contributed $35 per month to both union and nonunion teachers. The net difference payable by the teachers was $12.65 for nonunion teachers and $4.99 for union teachers.

In the amended complaint a provision of the "Master Agreement" entered into between the School District and the Union for the period effective September 1, 1973, is set forth in haec verba. This section of the agreement provides that on or before

April 1, the Union shall arrange for a medical, surgical and hospital plan for the benefit of its membership and the School District will make contribution of $35 per month per member teacher toward the cost of said plan and arrange for payroll deductions.

Plaintiffs allege that prior to July 1973 defendants Union, MPS and Hoxmer entered into a conspiracy to force plaintiffs to become members of the Union by insisting on a contract between the Union and MPS providing for discriminatory and excessive rates to be charaged plaintiffs and other nonunion teachers.

The agreement between the Union and MPS is alleged to be unlawful by reason of its violation of "Rule 36" of the Master Agreement for failure by the Union to write specifications and receive sealed bids for the medical and surgical coverage for the Union members; instead the Union negotiated a contract of coverage for its members that discriminated against plaintiffs and others similarly situated. The amended complaint further alleges this is in violation of sections 11-1024, 75-6118, 75-6120, 64-303 and 40-3509, R.C.M. 1947; the due process clause of the First and Fourteenth Amendments to the United States Constitution; and, Article II, Section 7, 1972 Montana Constitution.

It further alleges that plaintiffs are, in addition to not being members of the Union, taxpayers of Silver Bow County; that the agreement between the School District and the Union, which calls for a contribution on behalf of all teachers in the amount of $35 per month, is illegal in violation of section 11-1024, and asks that these contributions be repaid to Silver Bow County (not a party to this action) by the Union and MPS to the extent they exceed $120 per year per teacher. In the prayer, plaintiffs ask that only MPS be required to repay such amounts.

The law on conspiracy is relatively well settled in Montana. In 15A C.J.S., Conspiracy, §§ 1(1) and 1(2), it is said:

- 4 -

§ 1(1). "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."

§ 1(2). "The essential elements required to establish a civil conspiracy are the same as those required to establish a criminal conspiracy. In general, to constitute a civil conspiracy there must be: (1) Two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. * * *"

In 15A C.J.S., Conspiracy, § 2, it is further noted that if the object of an alleged "conspiracy" is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy. The foregoing is true even though damage may result to the plaintiffs and even though defendants may have acted with a malicious motive. If such were not the rule, obviously many purely business dealings would give rise to an action in tort on behalf of one who may have been adversely affected.

Prosser, Law of Torts, 4th Ed., p. 293, notes that it is not really the conspiracy which gives rise to a right of action, but the torts which may be committed in furtherance thereof. Each of these actions would support a claim for relief itself--- the only function served by the action of conspiracy being to connect nonacting but participating members who would not otherwise be liable to the one damaged.

"'* * * The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff.' It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable."

To sustain their action here, then, plaintiffs must allege a tort committed by one of the alleged conspirators.

The decisions of this Court are in accord with the foregoing. In Mustang Beverage Co., Inc. v. Jos. Schlitz Brewing Co., 162 Mont. 243, 251, 511 P.2d 1, the Court held:

- 5 -

"'* * * a combination of individuals for their
joint benefit does not constitute a conspiracy
* * * the actionable element of conspiracy is the
wrong done to the plaintiffs, not the combination
of persons constituting the conspiracy.'"

In an early case this Court noted that freedom of contract
is the general rule and that persons may grant or withhold their
business or patronage from others without incurring liability
therefor. In Empire Theatre Co. v. Cloke, 53 Mont. 183, 193, 163 P.
107, the Court holding a combination to do a lawful thing by
lawful means is no conspiracy, said:

"Every person has the right, singly and in combination
with others, to deal or refuse to deal with whom he
chooses; to reach his decision in that, as in all other
matters, upon or without good reason; to regard as un-
friendly all those who, with or without justification,
refuse to co-operate or sympathize."

In Empire Theatre the Court approved the use of a boycott by
members of a union against an employer.

The general rule set out in C.J.S. was approved in
Biering v. Ringling, 74 Mont. 176, 196, 240 P. 829, where the un-
lawful act was found to be a plan to defraud the plaintiff:

"'A conspiracy is a combination of two or more
persons by some concerted action to accomplish a
criminal or unlawful purpose or to accomplish a
purpose, not in itself criminal or unlawful, by
criminal or unlawful means.'"

See also: Mining Securities Co. v. Wall, 99 Mont. 596, 45 P.2d
302; Lindsay & Co. v. Mont. Federation of Labor, 37 Mont. 264,
96 P. 127.

A motion to dismiss for failure to state a claim upon
which relief can be granted, Rule 12(b)(6), M.R.Civ.P., is
equivalent to a demurrer under former civil procedure. Payne v.
Mountain States Tel. & Tel. Co., 142 Mont. 406, 409, 385 P.2d 100.
A motion to dismiss admits to all facts well pleaded and in
considering the motion the material allegations of the pleading
attacked are taken as true. Deich v. Deich, 136 Mont. 566, 585,
323 P.2d 35. Where a complaint states facts sufficient to con-
stitute a cause of action upon any theory, then the motion to dismiss

must be overruled. Magelo v. Roundup Coal Mining Co., 109 Mont. 293, 300, 96 P.2d 932. However, when a complaint alleges facts and, assuming the facts are true, there still is no claim for relief stated under any theory, a motion to dismiss must be granted.

Reducing the well pleaded facts to their essence and discarding the legal conclusions, the amended complaint seeks relief because after September 1973, plaintiffs as nonunion teachers were not permitted by the Union to remain as members of the group for which the Union contracted for health benefits for its members from MPS. The School District or Board of Trustees are not included in the alleged conspiracy. The illegal act inserted by plaintiffs to justify a tort to result in a conspiracy was failure of the Union, under its contract with the Board of Trustees for the benefit of the Union members, to draw specifications and receive bids for their health coverage. A procedural variation from their own contract would not be unlawful even if considered a breach by a party to the contract who would have standing to complain. Plaintiffs admit they are not Union members and have no standing in relation to a contract entered into by the Union for the benefit of its members. The Union did precisely what it had contracted to do. There is no legal reason why the Union was required to permit plaintiffs to be members of its group.

As to the role of MPS in the transaction alleged in the complaint, it was merely a seller of services. MPS was not a party to the contract between the Union and the School District of which plaintiffs complain, it merely sold certain benefits to the Union per its order and other benefits to other groups of School District employees. Since freedom of contract is the general rule there is no reason why MPS cannot contract for the furnishing of services with whatever groups it chooses and charge whatever rates it feels are justified to those groups with which it contracts. Great Northern U. Co. v. Public Ser. Com., 88 Mont. 180, 228, 229, 293 P. 294, reads in part:

> "'The general right to make a contract in relation to his business is part of the liberty of the individual protected by the 14th Amendment of the federal Constitution' (Lechner v. New York, 198 U.S. 45, 49 L.Ed.937, 25 Sup.Ct.Rep.539), and that 'the right of the owner to fix a price at which his property shall be sold or used is an inherent attribute of the property itself' (State Freight Tax Case, 15 Wall. (U.S.) 232, 278, 21 L.Ed. 146, 163) * * *."

See also: Hein v. Fox, 126 Mont. 514, 254 P.2d 1076 (1953).

As noted heretofore, when parties merely do what they have a legal right to do, and when the means used are not unlawful--an allegation in a complaint that the action amounts to a "Conspiracy" gives no right of action to anyone, even if the parties agreed among themselves to take such action.

Plaintiffs next use the violation of section 11-1024, R.C.M. 1947, as an unlawful act to supply the tort for the conspiracy. That section directs departments, agencies, etc. of the state of Montana, and all counties, cities and towns to contract for group health insurance when requested to do so by two-thirds of their employees and to make limited ($10.00) contributions to the cost of such coverage.

At the time School District Number One contributed $35 to the cost of all teachers' group health insurance there were two opinions of the attorney general of Montana holding that neither the grant of power to enter into and contribute to the cost of group hospital and medical insurance for the benefit of employees, nor the limitation on the amount of such contribution contained in section 11-1024, were applicable to school districts but the school districts had the authority and power to expend school funds for group insurance for teachers and employees as part of the salaries and compensation of the teachers and employees. 27 Opinions of the Attorney General No. 49; 30 Opinions of the Attorney General No. 6.

While opinions of the attorney general are not binding upon this Court, the Board of Trustees of School District Number One and the Union were entitled to rely on and act in accordance with those opinions when they negotiated the 1973-1974 Master Agreement.

On February 4, 1974, months after the Master Agreement was executed, the attorney general issued another opinion in which he held the previously mentioned two attorney general opinions "were no longer applicable" in view of this Court's decision in Teamsters v. Cascade Co. Sch.Dist. No. 1, 162 Mont. 277, 511 P.2d 339. 35 Opinions of the Attorney General No. 69. The effect of that attorney general opinion was short lived. The Montana Legislature amended section 11-1024, effective March 12, 1974, Montana Session Laws 1974, Chap. 188, by adding this sentence:

> "Provided, however, that for employees of elementary and high school districts premium contributions are not subject to the ten dollar ($10) limitation of this section."

We hold the $35 contribution was not unlawful. If it were unlawful it would not help to establish a conspiracy under the facts here as the party that would have violated the section by agreeing to make, and did make to all parties, a payment not authorized by law was the School District.

The violation of other statutes pleaded by plaintiffs have to do with teachers' rights, union practices, unfair practices and the like, which have little relevancy to the issue here, lacking a conspiracy.

The argument in brief as it pertains to discrimination in regard to conditions of employment by failure to belong to the Union, contrary to Benson v. School Dist. No. 1 of Silver Bow County, 136 Mont. 77, 344 P.2d 177 (1959), is without merit here. Benson was against the school district for contracting with the Union for

a "security clause" in the master contract which required teachers to join or lose salary benefits.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.