No. 81-04

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

TOWN OF BOULDER,

          Plaintiff, Cross-Appellant, and Respondent,

    vs.

WILLIAM BULLOCK and SONJA BULLOCK,

          Defendants and Cross-Respondents and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
In and for the County of Jefferson.
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Cross-Appellant:

Allen Le Mieux, Boulder, Montana
Harrison, Loendorf and Poston, Helena, Montana
*Keller, Reynolds Drake, Sternhagen & Johnson, Helena, Mont.*

For Cross-Respondents:

Harlen, Picotte & Thompson, Helena, Montana
~~Keller, Reynolds, Drake, Sternhagen and Johnson,~~
~~Helena, Montana~~

---

Submitted on briefs: June 17, 1981

Decided: **AUG 21 1981**

Filed: **AUG 21 1981**

Thomas J. Kearney
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The Town of Boulder filed a complaint on February 6, 1979, to enjoin the Bullocks from constructing their new building on any part of a certain designated town street. The Bullocks answered and also filed a cross-complaint for damages. The District Court of the Fifth Judicial District, State of Montana, in and for the County of Jefferson, dismissed the counterclaim, entered a judgment in favor of the Bullocks on the injunction and then denied the Bullocks' motion to reconsider. The Bullocks appealed the entry of judgment of dismissal on their counterclaim. This Court, by order dated March 19, 1980, dismissed that appeal without prejudice until a trial on the merits of the Town's complaint had been held.

Trial before the presiding judge was held on August 25, 1980. The District Court entered findings of fact and conclusions of law and judgment in favor of the Bullocks, refusing to grant the injunction. The Bullocks appeal the dismissal of their counterclaim, and the Town of Boulder cross-appeals the denial of an injunction preventing the building of the structure or affirmative relief requiring its removal.

The Bullocks are owners of property located in the Consolidated Addition to the Town of Boulder, which property borders on Main and Leslie Streets. The property is traditionally known as the Linn Motel and consists of Lots 9 through 19 of Block 48 of the Consolidated Addition. Sometime prior to September 1977 the Bullocks determined to build a home and an office on the property.

William Bullock attempted to determine the boundaries

-2-

of the property. He determined the boundary on Leslie Street by observing the position of the lots and the state of physical features of longstanding, including a boundary fence erected before the Bullocks purchased the property. In addition, he considered the power and telephone poles and facilities located on Leslie Street, nearby properties located on Leslie Street and the position of the used portion of Leslie Street. Bullock testified that he did not know where the edge of his property was located, that he did not get a surveyor to come out and that he located his building by "eye-balling" the area. He testified that he had seen survey pins on the boundary where the encroachment occurred, but that they were gone at the time he constructed the building on the encroachment. He did not locate his property line with certainty, and he was uncertain as to whether its location was totally within his property boundaries at the time of construction.

Bullock made an application for a building permit to Kenneth W. Trettin, the city clerk and building inspector of the Town of Boulder and the person authorized to issue building permits by the Town. He was told by Trettin that he would have to submit a plan showing the location and the dimensions of the proposed structure to receive a building permit. Trettin testified that at the time he, as city clerk and building inspector, did not have detailed knowledge of the boundaries of Leslie Street. The Bullocks submitted a plan which consisted of a drawing of the proposed structure measured from the corner of an existing building on the Bullock property. This method of measurement was specifically approved by Trettin. On September 26, 1977,

Trettin issued a building permit to the Bullocks based upon the plan as submitted. No survey of the Bullock property was required of the Bullocks at that time.

During the month of October 1977 the Bullocks ordered materials, hired contractors and completed the excavation of their proposed home and office, had the footings poured on the foundation and walls, and had the foundation walls themselves poured. This required the expenditure of several thousand dollars by the Bullocks. Additional progress was made on the construction during the remainder of 1977.

There was no evidence showing that during this period of time anyone in the Town of Boulder had any knowledge that the building being constructed by the Bullocks was encroaching upon Leslie Street. This information did not occur until sometime in June or July 1978. During the early construction period in 1978 the city building inspector attempted to find a curb box and in the process measured from a survey pin eighty feet across the street. From that point the building inspector, Trettin, sighted across the Bullock property. At this time Trettin assumed that the Bullocks were building into the street, and he so informed the Bullocks.

There was testimony at trial that, while the Bullocks had no knowledge that they might be encroaching on Leslie Street with their construction, Trettin had detailed knowledge of the boundaries of Leslie Street prior to issuing the building permit on September 26, 1977. During the spring of 1978 the Bullocks proceeded to work on the basement floor of their building and Trettin was again on the property and particularly at the building site. At those times he made

-4-

no mention of the alleged encroachment.

However, as noted above, the building inspector in July 1978, in attempting to find the curb box, felt that the building was out on the street and so informed the Bullocks. On July 24, 1978, William Bullock attended the regular meeting of the city council and informed the council that Trettin had told him that he might be building into Leslie Street. Bullock further told the council that he was willing to have a survey made.

The minutes of the council meeting show that the members of the council represented to Bullock that, if he were building into the street, they would never make a man tear down his house. Bullock testified that at that time he had in mind a previous action by the city council in October 1977 when they closed twenty feet of a street abutting to the north of his property at the behest of a Mr. Randall, then a member of the city council. In reliance upon the representations of the members of the city council and with his knowledge of the Randall matter, Bullock proceeded with additional work on his building. By August 14 the Bullocks had completed the basement floor, which was poured by a member of the city council.

Shortly after August 14, 1978, as a result of a city council meeting held on that date, Bullock was instructed by Trettin to cease construction until his survey was submitted to the city council. Bullock did cease construction, and on August 28, at another regular meeting of the city council, he submitted his survey. The survey indicated that the Bullocks' building was, in fact, occupying approximately eighteen feet of the north portion of Leslie Street. It is

important to note here that the streets, as laid out in this addition, were eighty feet wide.

On August 28, 1978, at a meeting of the city council, Bullock's survey was received. The then city attorney was instructed to do what was necessary to take care of the Bullocks' problem with regard to the street. Both William Bullock and the acting city attorney testified that they took the instructions of the city council to mean that the city attorney was to proceed with legal research to determine a lawful method by which the Bullocks would be allowed to keep their building where it was, and in particular, to allow them to occupy a portion of Leslie Street on which the encroachment existed. The city attorney, in fact, proceeded on that basis and so testified at trial.

Relying on these representations and the acts of the city council as an authorization to proceed, Bullock testified that he put up trusses and other elements of the wood portion of the building at various times until about September 12, 1978. After a city council meeting of which Bullock was not given notice, he was informed by Trettin that the Town now required him to tear down his building and remove it from Leslie Street. No action was ever taken by the Town to revoke the original building permit issued to the Bullocks, and the Bullocks at all times relied upon the building permit and the acts and the statements of the city council as authorization to proceed with their construction.

The District Court refused to grant an injunction against further construction and refused to grant the Town of Boulder its request for affirmative relief to require the removal the Bullocks' structure. We affirm that judgment.

As appellants, the Bullocks raise one issue: Whether the District Court erred in granting the Town of Boulder's motion to dismiss their counterclaim for failure to state a claim upon which relief could be granted.

As cross-appellant, the Town of Boulder raises two additional issues: (1) Whether the court erred in holding the Town estopped from claiming an injunction or requiring the removal of the Bullocks' building insofar as it encroached upon Leslie Street in the Town of Boulder; and (2) whether the court erred in failing to grant an injunction requiring the removal of the Bullocks' building insofar as it encroached upon any portion of Leslie Street.

We will first turn to the issues on cross-appeal, whether the court erred in ordering the Town of Boulder estopped from claiming an injunction from further construction or requiring the removal of defendants' building insofar as it encroached upon the portion of Leslie Street and whether the court further erred in refusing to authorize an injunction requiring the removal of defendants' building from Leslie Street.

The Town of Boulder argues that it is undisputed that a city or town has the power to prevent the obstruction of its streets, citing section 7-14-4102, MCA, which provides: "The city or town council has the power to: (1) Regulate and prevent the . . . obstruction of streets . . . by . . . any obstruction." The Town denies that there was any conduct on its part which would permit the District Court to invoke the doctrine of equitable estoppel and prevent the Town from exercising its statutory right to remove the obstruction from the street. We do not agree.

-7-

The law governing the application of equitable estoppel as it applies to municipal corporations is discussed and set forth by this Court in two cases. City of Billings v. Pierce Packing Co. (1945), 117 Mont. 255, 161 P.2d 636; State ex rel. Barker v. Stevensville (1974), 164 Mont. 375, 523 P.2d 1388. As argued by the Town of Boulder, this Court noted in Stevensville that the great weight of authority holds that a municipal corporation is not bound by acts or statements of its agents or officers made in excess of their authority, even where a third party relied thereon to his detriment. However, we further noted in Stevensville that there are exceptions to that rule. Such exceptions are to be applied with great caution and only in exceptional cases. We find this to be just such a case. This Court stated in City of Billings v. Pierce Packing Co., 117 Mont. at 266, 161 P.2d at 640:

> "The general rule is that equitable estoppel is applied to municipal corporations with great caution and only in exceptional cases. 'While the doctrine of equitable estoppel is sometimes invoked in what are termed "exceptional cases," it is always applied, and wisely so, with much caution to municipal corporations in matters pertaining to their governmental functions . . . There is greater reason why city streets should not be subject to destruction by nonuse or adverse possession than can be found applicable to any other kind of property. No other kind of public property is subject to more persistent and insidious attacks or is less diligently guarded against seizure.' McQuillan, Municipal Corporations, Vol. 4, Sec. 1515, and supporting cases."

Here, the District Court in its Conclusion of Law No. 4 noted:

> "The elements necessary to make out a case for the application of the Doctrine of Equitable Estoppel are succinctly set forth in the case of City of Billings v. Pierce Packing Co., 117 Mont. 266, 161 P.2d 636.

Those elements are as follows: (1) There must be conduct--acts, language, or silence--amounting to a representation or a concealment of facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it."

The District Court, in its findings of fact and conclusions of law, went on to note that Trettin, the city clerk, had sufficient knowledge, as both city clerk and building inspector, to have ascertained the boundaries of the property in question and that Trettin was on the property for a period of nearly a year before the action of the city council was taken. The court further noted the council's representation to the Bullocks and its instructions to the city attorney to take care of the Bullocks' problems at the city council meeting on August 28, 1978.

The judge found that these acts and many others constituted a representation or concealment of material facts. We agree with the District Court that the facts are sufficient to deny the Town's request for removal of the structure. In particular the judge found: that the building permit constituted an authorization to proceed and a repre-

sentation that the plans submitted by the Bullocks were proper; that the acts and representations of the city council constituted a representation reasonably taken by the Bullocks as authorization to proceed with their construction after the presence of the encroachment was discovered; and that, according to the testimony of the former mayor of the Town, she, and in her opinion other members of the council, intended to require the removal of the structure as early as July 24, 1978, but did not communicate this intention to the Bullocks.

The issues raised by the Bullocks on appeal involve the dismissal of their counterclaim. As previously noted, the Town of Boulder brought an action to enjoin defendants' encroachment on the city street, and defendants answered by general denial and asserted a counterclaim against the Town. The Town replied by a motion to dismiss and strike the counterclaim which the court granted. At no time did defendants amend their counterclaim. The case went to trial on the Town's claim for an injunction. The court held that the Town was estopped from preventing defendants' encroachment. The total effect of the proceeding thus far has been to judicially allow the encroachment and to deny the claimed damages.

We are confronted with the basic issue of whether the counterclaim states a claim upon which relief can be granted. Stripped down to the essentials, the defendants' counterclaim is very nearly an assertion that because the Town filed the suit, defendants have been damaged. The counterclaim can be divided into three counts. The first count alleges negligent conduct giving rise to something

like an estoppel, although the term "estoppel" is not used, that the council by its action led the Bullocks into changing their position to their detriment. It further alleges a violation of defendants' constitutional right to due process with respect to a proposal or attempt to purchase a portion of the street right-of-way in that defendants were not given notice of any proposed sale which was allegedly on the agenda of the council at the time this trouble occurred.

The second count alleges that the Bullocks were victims of discrimination by the Town. It lists individuals whose structures encroach on various street right-of-ways and alleges that the Town, having allowed other encroachments, is unlawfully discriminating against defendants by attempting to remove defendants' encroachment.

The third count alleges that the Town issued a building permit to the defendants and unlawfully misrepresented to them they could legally build a structure on their property and that defendants relied to their detriment on the misrepresentations.

In each count the Bullocks claimed damages as a result of the Town's conduct. The Bullocks have allegedly suffered "humiliation, frustration, public ridicule, loss of business reputation, mental anguish and mortification." They also claim that if they were required to remove their building, they would be entitled to the sum of $22,500 as a cost of removal. As noted above, that issue has been decided in their favor. Defendants further claim damages of $450 per month for loss of rent and the inability to close down a motel structure. Defendants prayed, among other

things, for the items of damage mentioned and for attorney fees.

The Town's motion to dismiss was made pursuant to Rule 12(b)(6), M.R.Civ.P., which reads in pertinent part as follows:

> "(b) How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . ."

The Bullocks argue that their complaint for damages should not have been dismissed and rely on Duffy v. Butte Teachers' Union No. 332, AFL-CIO (1975), 168 Mont. 246, 541 P.2d 1199, where this Court, speaking to a motion to dismiss, stated:

> "A motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), M.R.Civ.P., is equivalent to a demurrer under former civil procedure. [Citation omitted.] A motion to dismiss admits to all facts well pleaded and in considering the motion the material allegations of the pleading attacked are taken as true. [Citation omitted.] Where a complaint states facts sufficient to constitute a cause of action upon any theory, then the motion to dismiss must be overruled. [Citation omitted.]" 168 Mont. at 252-253, 541 P.2d at 1202-1203.

Defendants cite also as authority to this holding Buttrell v. McBride Land and Livestock (1976), 170 Mont. 296, 553 P.2d 407. Thus, in arguing against the dismissal of their counterclaim below, the Bullocks argue that certain assumptions must be made: first, all facts set forth in the counterclaim are assumed true; second, all these facts are to be read and interpreted in favor of the Bullocks; and third, that the granting of a motion to dismiss is held in

disfavor unless the allegations in the counterclaim affirmatively demonstrate that no action lies and the motion should be denied.

Whether the Town's conduct is characterized as negligence or is characterized as containing misrepresentations, we feel makes little difference. The essence of the claims is that they were misled by the conduct of the Town to their disadvantage. This Court has held recently in Adams v. Adams (1979), ___ Mont. ____, 604 P.2d 332, 334, 36 St.Rep. 2374, 2377, as to equitable estoppel:

> ". . . To iterate, for equitable estoppel to exist, there must be: (1) a false representation or a concealment of facts, (2) made with the knowledge, actual or constructive, of the facts, (3) to a party without knowledge or means of knowledge of the facts, (4) with the intention that it should be acted upon and (5) reliance on the false representation to his or her prejudice by the other. . ."

The District Court did not err in dismissing the counterclaim.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-13-