No. 94-470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE PATERNITY OF W.L.,
a Minor:

ELIZABETH LAMDIN,

      Petitioner and Appellant,

   v.

ANGELO FERRARO,

      Respondent and Respondent.

**FILED**

APR 12 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Donald L. Harris, Crowley, Haughey, Hanson,
          Toole and Dietrich, Billings, Montana

      For Respondent:

          Mark D. Parker, Parker Law Firm, Billings,
          Montana


             Submitted on Briefs:  February 16, 1995

                    Decided:  April 12, 1995

Filed:

_____
             Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Elizabeth Lamdin appeals an order in which the District Court for the Thirteenth Judicial District, Yellowstone County, declined to order Angelo Ferraro to pay back child support in addition to amounts he has already paid. We affirm.

The issue is whether the court erred in waiving past child support under § 40-6-116(4)(c), MCA.

Elizabeth Lamdin, a registered nurse who lives in Billings, Montana, is W.L.'s mother and has raised him since his birth in January 1991. During that time, Angelo Ferraro, W.L.'s father, has practiced as a cardiologist in Billings and then in Oklahoma and Washington. He has visited W.L. about six times per year. Lamdin and Ferraro never married.

From W.L.'s birth until his first birthday, Ferraro contributed $2,000 per month to Lamdin for W.L.'s support. Lamdin stayed at home to raise W.L. during that time, because both parents believed it was best for their son. In February 1992, Ferraro reduced his support payment to $1,000 per month and Lamdin returned to work. Lamdin filed this paternity action shortly thereafter. Ferraro paid child support of $1,000 per month until the District Court set child support at $950 per month in October 1992. That judgment was appealed to this Court on several issues. See In re Paternity of W.L. (1993), 259 Mont. 187, 855 P.2d 521. We remanded for calculation of past and future child support.

On remand, Ferraro and Lamdin each presented their calculations of the amounts of past and future child support which should

2

be ordered pursuant to the child support guidelines promulgated by the Montana Department of Social and Rehabilitation Services. Their calculations differed because of differences in their views of the proper income figures and variances, deductions, exemptions, and exceptions attributable and allowable to each of them under the guidelines.

For purposes of calculating back child support, both Ferraro and Lamdin divided the time from W.L.'s birth to the date of the hearing into several segments. This was necessary because of interim changes in the child support guidelines and in each of their incomes and expenses. Under Ferraro's calculations, he was responsible for child support in monthly amounts ranging from $131 to $1,476 for the time since W.L.'s birth. Lamdin calculated that Ferraro was responsible for past child support ranging between $1,725 and $1,988 per month. Under Lamdin's calculations, after considering what he had already paid, Ferraro still owed her $25,584 in back support. Under Ferraro's calculations, he had overpaid by $20,774.

The District Court ordered Ferraro to pay Lamdin $1,341 per month in future child support. This amount was lower than the amount proposed by Lamdin but higher than that proposed by Ferraro. The court did not order Ferraro to pay any back child support. In its findings, the court stated:

> The Court declines to award past child support in addition to the support previously paid by Ferraro. In this respect the Court has concluded that it should limit Ferraro's liability for past support to the proportion of expenses which he has already paid in accordance with Section 40-6-116(c) [sic] M.C.A. To the extent that any

3

amount for varying periods of time may deviate from the child support guidelines, the Court finds it would be unjust to Ferraro and inappropriate in this case to require additional past support under Section 40-6-116(6)(a) M.C.A. . .

. . .

The amounts paid by Ferraro have met or exceeded the actual living expenses of [W.L.]. Lamdin testified that the total living expenses attributed to [W.L.] is currently $1,092 per month. That amount seems liberal to the Court. Such amount should be greater than it was in the child's early life. Of this amount day care consumed $330 per month. Therefore the previous amounts paid by Ferraro have substantially met or exceeded the actual living expenses attributed to [W.L.].

. .

One of the goals of a child support calculation where parents have significant income, as here, is that the child should continue to maintain a standard of living as if his parents were living together. Here the parents never did live together. The Court is of the opinion that future child support should be paid for the purpose of maintaining for [W.L.] a standard of living appropriate to the income of his parents. This is accomplished by assessing such support in accordance with the child support guidelines. However, for past years [W.L.] has lived very well on the support already paid by Ferraro. Lamdin has not accumulated debt by reason of any failure of Ferraro to pay a greater support.

Lamdin appeals only the portion of the District Court's order waiving additional back child support

Did the court err in waiving past child support under § 40-6-116(4)(c), MCA?

Section 40-6-116, MCA, provides, in relevant part:

Judgment or order. (1) The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes.

.

4

(3) . . .

(b) Except when the financial responsibility of a responsible parent is in the process of being determined pursuant to the administrative procedure provided in 40-5-225, the judgment or order must contain a provision concerning the duty of child support. .

(4) (a) Support judgments or orders ordinarily must be for periodic payments, which may vary in amount.

(b) In the best interest of the child, a lump-sum payment or the purchase of an annuity may be ordered in lieu of periodic payments of support.

(c) The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court considers just.

(5) In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall consider all relevant facts, including:

(a) the needs of the child, including medical needs;

(b) the standard of living and circumstances of the parents;

(c) the relative financial means of the parents;

(d) the earning ability of the parents;

(e) the need and capacity of the child for education, including higher education;

(f) the age of the child;

(g) the financial resources and the earning ability of the child;

(h) the responsibility of the parents for the support of others;

(i) the value of services contributed by the custodial parent;

(j) the cost of day care for the child; and

(k) any custody arrangement that is ordered or decided upon.

(6) (a) Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of social and rehabilitation services pursuant to 40-5-209. The guidelines must be used in all cases, including cases in which the order is entered upon the default of a party and those in which the parties have entered into an agreement regarding the support amount. Averified representation of a defaulting parent's income, based on the best information available, may be used when a parent fails to provide financial information for use in applying the guidelines. The

amount determined under the guidelines is presumed to be an adequate and reasonable support award, unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case.

(b) If the court finds that the guideline amount is unjust or inappropriate in a particular case, it shall state its reasons for finding that the application of the standards and guidelines is unjust to the child or a party or is inappropriate in that particular case. Similar reasons must also be stated in a case in which the parties have agreed to a support amount that varies from the guideline amount. Findings that rebut and vary the guideline amount must include a statement of the amount of support that would have ordinarily been ordered under the guidelines.

(c) If the court does not order a parent owing a duty of support to a child to pay any amount for the child's support, the court shall state its reasons for not ordering child support.

The formula for determining an appropriate amount of child support is further detailed in the child support guidelines adopted by the Department of Social and Rehabilitation Services pursuant to § 40-5-209, MCA. See 46.30.1501 through .1549, ARM. While the statute and guidelines attempt to be specific for every possible situation, the statute reserves some discretion to the district court. E.g., "[t]he court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court considers just" under subsection (4)(c); "[i]f the court finds that the guideline amount is unjust or inappropriate in a particular case . . ." under subsection (6)(b); and "[i]f the court does not order a parent owing a duty of support to a child to pay any amount for the child's support ." under subsection (6)(c).

Lamdin's argument on appeal is based primarily upon the absence in the court's order of a statement of the amounts of past

child support which would have been due under the child support guidelines. Lamdin argues that this omission violates subsection (6)(b) above and the law of the case as established in this Court's opinion in the first appeal. She also argues that the court's order is fatally flawed because it fails to state that divergence from the guidelines was justified by clear and convincing evidence, as required under subsection (6)(a), above.

In this Court's opinion on the first appeal of this case, we discussed the District Court's failure to apply the child support guidelines as to future support. In then briefly discussing the issue of past support, we wrote:

> As discussed under Issue I, departures from the guide-lines must comply with § 40-6-116(6)(a) and (b), MCA. On remand, the District Court is directed to make such adjustments to its findings, conclusions, and order concerning past child support as are necessary as a result of this Opinion.

Paternity of W.L., 855 P.2d at 523.

Section 40-6-116(4)(c), MCA, which specifically addresses back child support, was not cited in the first appeal. The statute does not specify whether all of the provisions of subsections (6)(a) and (b) must still be met when the provisions of subsection (4)(c), specifically relating to past support, are applied. In view of the statement in subsection(6)(a) that child support obligations shall be determined "by applying the standards in this section," which reference includes subsection (4)(c), it is arguable whether all of the provisions of subsections (6)(a) and (b) still apply. However, we conclude that even if Lamdin is correct as to the intent of the

7

statute, that does not control the resolution of this appeal, for the following reasons.

No civil case shall be reversed by reason of error which would have no significant impact upon the result. Rule 14, M.R.App.P.; In re Marriage of Cannon (1985), 215 Mont. 272, 275, 697 P.2d 901, 903. Where there is no showing of substantial injustice, the error is harmless and may not be used to defeat the judgment. In re Marriage of Green (1979), 181 Mont. 285, 289, 593 P.2d 446, 449.

We are not here presented with a case in which there was insufficient evidence as to the proper amount of past child support under the child support guidelines. The District Court was presented with abundant evidence on that point. The amount of additional back child support ordered (none) is within the range of the evidence presented at trial.

Further, had the District Court set forth in its order the amounts of back child support required under the child support guidelines, and stated that clear and convincing evidence supported a variance, the court would have retained the discretion under subsection (4)(c) to limit past support. The court's order sets forth ample justification for its decision not to award additional past child support. As the court pointed out, the amounts actually paid by Ferraro in the past substantially met or exceeded W.L.'s actual past living expenses as described at trial, without the necessity of including any monetary contribution by Lamdin.

We conclude that there has been no showing of substantial injustice as a result of the court's failure to set forth the

8

guideline amounts for past child support. We similarly conclude that there has been no showing of substantial injustice as a result of the court's failure to set forth the standard of clear and convincing evidence.

Lamdin also maintains that Montana's statutory scheme violates W.L.'s right to equal protection. She contends Montana's laws discriminate between legitimate and illegitimate children in that the statutes concerning child support following a dissolution of marriage do not include a provision equivalent to § 40-6-116 (4)(c), MCA. This argument was first raised on appeal. Lamdin did not notify the Montana Attorney General of her challenge to the constitutionality of these statutes at the district court level, as required under § 27-8-301, MCA. Absent such notice, and absent development of the record on this issue at the trial court level, we will not consider the argument on appeal. See Femling v. Montana State University (1986), 220 Mont. 133, 139, 713 P.2d 996, 999.

No useful purpose would be served by remanding this case to require the District Court to insert into its order its calculations of the amounts of past child support due under the child support guidelines and to recite the clear and convincing evidence standard for variance from the guidelines. The court's decision not to award additional past support is justified under the rationale set forth in the court's findings, conclusions, and order.

We hold that the District Court did not err in waiving past child support under § 40-6-116(4)(c), MCA.  Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

10

Justice W. William Leaphart, dissenting.

I dissent. The majority has affirmed the District Court in waiving past child support under § 40-6-116(4)(c), MCA. Lamdin contends that the District Court erred by waiving past due child support without first calculating what those support payments would have been, as required by § 40-6-116(6)(b), MCA. I agree. Subsection (6)(a) very clearly requires that the guidelines must be used in all cases. Subsection (6)(b) requires that, "Findings that rebut and vary the guideline amount must include a statement of the amount of support that would have ordinarily been ordered under the guidelines." Subsection (c) then requires that the court, if it does not order the parent owing a duty of support to pay any amount for support, "shall state its reasons for not ordering child support." The obvious intent is to require the District Court to first establish what the guidelines require by way of child support before the court determines whether it is appropriate to vary or waive that amount. Without first knowing what the guidelines require, it is impossible for the District Court (in the first instance) or this Court (on appeal) to know whether a waiver or variance is "unjust or inappropriate" in a particular case. In the absence of guideline calculations, this Court is left with no reference point in determining whether the District Court's waiver amounts to a "substantial injustice."

The legislature has stated that the guidelines "must be used

11

in all cases."  "Must" is mandatory and "all" means every.  Neither
concept  leaves  room  for  any  exceptions.

_____
Justice


Justice  James  C.  Nelson  joins  in the foregoing dissent of
Justice W.  William  Leaphart.

_____
Justice


12