No. 95-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

ROCKY MOUNTAIN ENTERPRISES, INC., a Montana Business
Corporation, SUSAN A. BLACK, individually and as Guardian Ad Litem
for Veronica Black, her minor child; and DAVID A. BLACK,

Plaintiffs and Appellants,

v.

PIERCE FLOORING, CARPET BARN, THOMAS HUGGINS,
ESTATE OF GEORGE R. PIERCE, AND G. RON PIERCE,

Defendants/Respondents/Cross-Appellants.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert L. Stephens, Jr.; R. L. Stephens, Ltd.;
Billings, Montana

For Respondents:

Calvin J. Stacey; Stacey & Walen; Billings, Montana

Thomas Huggins; Pro Se; Billings, Montana

Submitted on Briefs: August 26, 1997

Decided:   December 23, 1997
Filed:

—————————————————————————————————
Clerk


Justice Jim Regnier delivered the Opinion of the Court.


David Black, Susan Black, individually, and as guardian ad litem for Veronica Black, her minor child, and Rocky Mountain Enterprises, Inc., appeal from a Thirteenth Judicial District Court, Yellowstone County, jury verdict and subsequent post-trial orders. The defendants cross-appeal.  We affirm.

The issues on appeal are restated as follows:

1.    Did the District Court commit error to justify remand of the case for retrial for damages only based upon:

A.    Exclusion of David Black's opinion testimony as to Rocky Mountain's projected lost profits and business value;

B.    Refusal to admit the deposition testimony of Susan Black;

C.    The directed verdict against the minor child, Veronica Black;

D.    Inadequacy of the jury verdict;

E.    Admittance of police reports regarding the Blacks' domestic disputes into evidence;

F.    Exclusion of plaintiffs' expert witnesses; and

G.    Improper argument.

Rocky Mountain Enterprises and the Blacks also raise the following issues on appeal:

2.    Did the District Court err in denying Rocky Mountain and the Blacks' memorandum of costs as untimely?

3.    Did the District Court abuse its discretion in imposing sanctions against plaintiffs' counsel?

4.    Did the District Court err in granting summary judgment against plaintiffs on the claim of civil conspiracy?

The following issues are raised on cross-appeal:

1.    Did the District Court err in failing to dismiss the complaint pursuant to Rule 41(e), M.R.Civ.P.?

2.    Did the District Court err in not granting either the defendants' motion for summary judgment or later motion for a directed verdict on plaintiffs' claims based on vicarious liability and negligence?

## FACTUAL BACKGROUND

In June 1985, David and Susan Black started Rocky Mountain Enterprises, Inc., a closely-held corporation engaged in the wholesale distribution and sales of carpeting and other floor covering products in Billings.  The Blacks made an arrangement with a carpet manufacturer's representative which allowed them a very favorable pricing structure.  In March 1986, they began an advertising campaign that received a good response and their business steadily improved.

In October 1986, Susan Black started receiving hang-up nuisance calls at both the business during the day and at the Blacks' residence in the evening. On October 26, 1986, the tires on Susan's vehicle were slashed. Again on December 2, 1986, all four tires on her vehicle were slashed while it was parked at her residence. On December 17, 1986, someone slashed the tires on David's vehicle and broke into Susan's vehicle and slashed the headrests, seats, and interior. Finally, on December 24, 1986, an intruder came up on the porch of the Blacks' residence, unscrewed a light bulb, slashed a tire on Susan's vehicle, and threw essence of skunk into the vehicle. David and a security guard chased the intruder, but were unable to catch him.

After the incident on December 17, the Billings Police Department suggested that a telephone wiretap be put in place. The telephone calls were traced to Pierce Flooring, Inc., in Billings. Pierce Flooring was a competitor to Rocky Mountain, and is owned and run by the Pierce family who are individually named as defendants. The Pierce family also owns and runs Carpet Barn, a Montana corporation engaged in the retail sale of carpeting and other floor coverings. Tom Huggins, an employee of Carpet Barn, admitted to having made the nuisance calls to the Blacks but insisted that he made all the calls from Carpet Barn.

Upon questioning by the Billings police, Huggins admitted that his activities against the Blacks were related to the carpet business. He emphasized that no other person associated with the Pierce family or businesses knew what he was doing and denied that anyone else ever assisted him with his actions against the Blacks. On April 17, 1987, all charges were dismissed against Huggins based upon his acceptance into a deferred prosecution program.

On October 21, 1988, David and Susan Black, their minor child Veronica Black, and Rocky Mountain Enterprises, Inc., filed a complaint against George R. Pierce, Inc.; Pierce Flooring; Carpet Barn; George L. Pierce; G. Ron Pierce; Dorothy E. Pierce; and William D. Pierce (the Pierce defendants); and Thomas Huggins. In the complaint, Rocky Mountain and the Blacks sought recovery for damages against the defendants as a result of the criminal conduct committed by Huggins in 1986 while employed by Carpet Barn.

On December 29, 1994, the Pierce defendants moved for summary judgment on some of the plaintiffs' claims. The District Court returned an order and memorandum on January 10, 1995. In its order, the District Court granted partial summary judgment to the Pierce defendants on the Blacks' civil conspiracy claim. The District Court granted partial summary judgment to Pierce Flooring, Estate of George L. Pierce, and G. Ron

Pierce as to the issue of respondeat superior.  The District Court denied summary judgment on the issue of respondeat superior as to Carpet Barn.  The District Court ultimately dismissed the case as to Pierce Flooring, Estate of George L. Pierce, and G.

Ron Pierce.  Although unclear from the record, around this time, the defendants George

R. Pierce, Inc., Dorothy E. Pierce, and William D. Pierce were either dismissed by the

District Court or voluntarily dismissed by the plaintiffs.  Thus, the remaining defendants

in this case were Carpet Barn and Thomas Huggins.

A jury trial began on January 30, 1995.  On February 6, 1995, the jury returned a special verdict.  The jury found that the acts of Huggins were committed within the scope of his employment with Carpet Barn and that those acts were a cause in fact and proximate cause of damages to the plaintiffs.  The jury also found Carpet Barn negligent,

and that negligence was a cause in fact and proximate cause of damages to the plaintiffs.

The jury awarded damages in the amount of $35,000 to Rocky Mountain.  The jury awarded nothing to Susan or David Black.  Finally, the jury found that Huggins acted with actual or implied malice that entitled the plaintiffs to an award of punitive damages.

On February 7, 1995, the jury awarded punitive damages in favor of Rocky Mountain and against Huggins in the amount of $51.  The District Court entered judgment on March 7, 1995.  The District Court also entered several post-judgment orders.

Rocky Mountain and the Blacks appeal and defendant Carpet Barn cross-appeals from the judgment orders of the District Court.

ISSUE 1

Did the District Court commit error to justify remand of the case for retrial for

damages only based upon:

A.    Exclusion of David Black's opinion testimony as to Rocky Mountain's projected lost profits and business value?

Rocky Mountain and the Blacks argue that the District Court abused its discretion

by precluding David Black from testifying as to the economic loss, lost profits, and future

income of Rocky Mountain.  Rocky Mountain and the Blacks contend, and the defendants do not dispute, that expert testimony is not necessary to establish economic losses such

as lost profits or lost income.  However, Carpet Barn argues that the District Court properly precluded some of David Black's testimony regarding projected lost profits and

income after Rocky Mountain went out of business because he was not qualified as an expert and, therefore, he would be offering speculative opinion testimony as to an amount

representing future lost profits of Rocky Mountain.

Rule 701, M.R.Evid., states:

Opinion testimony by lay witnesses.  If the witness is not testifying as an
expert, the witness' testimony in the form of opinions or inferences is
limited to those opinions or inferences which are (a) rationally based on the

perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

A district court has great discretion in the admittance of evidence and we will not overturn a court's decision unless the court abused its discretion. Miranti v. Orms (1992), 253 Mont. 231, 235, 833 P.2d 164, 166.

At trial, plaintiffs attempted to introduce evidence concerning projected lost profits and income of Rocky Mountain through the testimony of owner David Black. Carpet Barn objected to that testimony, arguing that Black was not an expert witness in this matter and, therefore, was unqualified to testify about projected lost profits and income.

Outside the presence of the jury, Black was examined by both parties in order for the District Court to determine whether Black was "qualified as an expert or if the alleged opinions are opinions that can be given by a non-expert."

The District Court ruled that David Black could not testify about projected lost profits and income. The District Court stated:

[T]he opinion that is being requested of [Black] to project lost profits from the time that his business went out of business into the future as an expert opinion, is not appropriate for lay testimony because he happened to have been a stockholder of that company at the time it went out of business.

Having made that ruling I'm going to rule that the witness is not qualified to testify as an expert in economics to make the projections that are intended to be made here.

The District Court also stated that any testimony by David Black regarding projected lost profits and income as an expert witness would be excluded because it was not subject to Rule 26, M.R.Civ.P., disclosure. Furthermore, if disclosure was allowed on the day of testimony it would be untimely to be allowed into evidence. (See discussion regarding expert witnesses infra.)

A nonexpert witness is generally limited to testifying to matters of fact. Walden v. State (1991), 250 Mont. 132, 144, 818 P.2d 1190, 1197. Any lay opinions given must be based upon the witness's own perceptions or helpful to a clear understanding of the witness's testimony or a determination of a fact at issue. Rule 701, M.R.Evid. Certainly, Black, as an owner of Rocky Mountain, was entitled to provide the jury with his opinion regarding the value of the business and even his estimate of lost profits. In this instance, however, Black was attempting to present scientific economic testimony as to his business's future lost profits, apparently because his economist was not being

allowed to testify.  During the trial, the court granted significant leeway to Black in presenting this testimony but did not allow him to give scientific economic testimony since he was not qualified to do so.  Essentially, Black was attempting to mimic the testimony of his excluded economic expert.  The District Court correctly ruled that such scientific testimony could only be presented through an expert and there was no evidence of Black's specialized skill as an economist.

After a review of the record and trial transcript, we conclude that the District Court did not abuse its discretion in precluding David Black from testifying in the manner proffered about the value of projected lost profits of Rocky Mountain Enterprises.

B.   Refusal to admit the deposition testimony of Susan Black?

At the last minute, Susan Black refused to attend the trial.  At the time of trial, Susan and Veronica were living in San Diego, California.  During trial, David and Rocky Mountain's attorney received a faxed declaration from Susan stating that neither she, nor David and Susan's child, Veronica, would attend the trial.  In her declaration, Susan stated that she would not appear at trial because she feared that she and her daughter would be placed in jeopardy of physical harm and that her appearance at trial would "create more reason for these very sick people to begin the harassment all over, or put myself or my family in physical jeopardy."

Based upon the declaration, David and Rocky Mountain attempted to read the deposition of Susan to the jury.  Counsel for Carpet Barn objected and the matter was taken up by the District Court outside the jury's presence.

The District Court would not allow the deposition of Susan Black to be read.  The reason for this, the District Court said, was that "she is a party, that this [declaration] does not indicate an unavailability to appear at time of trial, but only a disinclination and refusal to appear at time of trial."  Furthermore, the District Court stated that it could not allow Susan "to not show up and then let her deposition stand as her testimony without the ability to cross-examine."

The use of depositions in court proceedings is governed under Rule 32, M.R.Civ.P.  Rule 32(a)(3)(B), provides:

 The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition . . . .

David and Rocky Mountain argue that the District Court erred by excluding the deposition of Susan Black, as offered on their behalf.  They contend that there is no question that Susan was more than 100 miles from the place of trial.  Moreover, they

assert that they had met their burden of proof to the District Court in showing that Susan was absent from the jurisdiction.

Carpet Barn argues that the District Court's ruling to preclude the use of Susan's deposition because of her conscious decision not to attend the trial was well within its discretion and proper under the facts and circumstances. Carpet Barn relies on In re Marriage of Powell (1988), 231 Mont. 72, 750 P.2d 1099, for the proposition that a district court has discretion under Rule 32(a)(3)(B), M.R.Civ.P., in ruling whether or not to allow a deposition to be entered into trial as evidence.

In Powell, a party decided not to attend a hearing for personal reasons. Because he was more than 100 miles from the district court, his attorney attempted to offer his deposition as evidence of his testimony under Rule 32(a)(3)(B). This Court upheld the district court's refusal to admit the deposition as evidence at the hearing. We stated that it was the party's decision not to attend the hearing, "but he cannot later introduce testimony which cannot be verified or cross-examined." Powell, 231 Mont. at 75, 750 P.2d at 1101-02. Although not specifically stated, our decision in Powell was correct because it was apparent that the deposition was being offered by a party who procured his own absence.

Under Rule 32(a)(3)(B), M.R.Civ.P., a district court may exclude a deposition if the absence of the deposed witness was procured by the party offering the deposition. However, if there is no evidence that the party offering the deposition procured the absence of the witness, then the District Court cannot bar the use of a deposition when the deposition of a witness or party is being offered and that witness or party is at a distance greater than 100 miles from the place of trial or hearing.

In the present case, the deposition of Susan Black was offered on behalf of the claims of Rocky Mountain and David Black. There was no evidence before the District Court that either David or Rocky Mountain had procured the absence of Susan. Therefore, we determine that the District Court erred in excluding the deposition of Susan Black, as offered by David Black and Rocky Mountain. At trial, David Black and Rocky Mountain met the burden of proof, showing that Susan was absent from the jurisdiction and, thus, under Rule 32(a)(3)(B), the District Court should have allowed the deposition of Susan Black to be entered into evidence.

The question remains, however, whether the District Court's error in not allowing the deposition into evidence was reversible error. "No civil case shall be reversed by reason of error which would have no significant impact upon the result. Where there is no showing of substantial injustice, the error is harmless and may not be used to

defeat the judgment." In re Paternity of W.L. (1995), 270 Mont. 484, 489-90, 893 P.2d 332, 336 (citations omitted).

Having reviewed the deposition, we conclude that the deposition was merely cumulative of other evidence presented to the jury. Cumulative evidence is additional evidence of the same character to the same point. Section 26-1-102(4), MCA. The failure of the District Court to allow the deposition to be offered into trial was harmless error and, therefore, does not warrant a reversal for a new trial on the issue of damages for the claims of David Black and Rocky Mountain.

C. The directed verdict against the minor child, Veronica Black?

The Blacks argue that the District Court erred in granting Carpet Barn's motion for a directed verdict against Veronica Black. Carpet Barn argues that the District Court properly directed a verdict against Veronica's claim for emotional distress because there was no evidence to show that she suffered a substantial invasion of her rights so as to cause a significant impact upon her person which in turn resulted in severe emotional distress. The District Court granted the motion for a directed verdict "on the basis that the evidence does not justify emotional distress damages to Veronica Black."

Under Rule 50(a), M.R.Civ.P., a district court may grant a party's motion for directed verdict if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Having reviewed the record, there is simply no evidence to justify an award to Veronica for severe emotional distress. We conclude, therefore, that the District Court was correct in granting Carpet Barn's motion for a directed verdict on the claim of severe emotional distress damages on behalf of Veronica Black.

D. Inadequacy of the jury verdict?

On February 6, 1995, the jury returned its verdict in favor of Rocky Mountain and against Carpet Barn and Huggins. The jury awarded $35,000 to Rocky Mountain. The jury awarded nothing to David and Susan Black.

On March 16, 1995, the plaintiffs filed a motion to amend or alter judgment pursuant to Rule 59(g), M.R.Civ.P. They argued that the jury award was inadequate. The District Court denied the motion and left the jury award undisturbed.

Rocky Mountain and the Blacks argue that the jury verdict was inadequate because the jury failed to award them damages for emotional distress and property damage. They also contend that the award of $51 as punitive damages against Huggins was inadequate.

The standard of review of a jury's verdict is whether there is substantial credible evidence in the record to support it. Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 422, 913 P.2d 641, 646. We review the evidence in the light most favorable to

the prevailing party in the district court. Noll v. City of Bozeman (1977), 172 Mont. 447, 564 P.2d 1296. If conflicting evidence exists, the credibility and weight given to the evidence is in the jury's province and we will not disturb the jury's findings unless they are inherently impossible to believe. Silvis through Silvis v. Hobbs (1992), 251 Mont. 407, 411-12, 824 P.2d 1013, 1015-16.

First, the Blacks assert that the jury erred in failing to award them damages for emotional distress. In its order denying the plaintiffs' motion to reconsider, the District Court stated that there "is insufficient evidence to require an award of damages for emotional distress or mental pain and suffering to . . . Susan or David Black."

We agree with the District Court. The Blacks presented evidence to the jury for emotional distress damages. Carpet Barn also offered contradictory evidence which included the Blacks' marital troubles at the time of Huggins' acts. The jury could have reasonably found that the Blacks' emotional distress resulted from factors other than the acts of Huggins and Carpet Barn.

Second, Rocky Mountain and the Blacks contend that the jury failed to award them property damage. On appeal, plaintiffs do not clearly state why the award was inadequate in regard to property damages. In their motion to alter or amend judgment, plaintiffs ask the judgment to be altered because the evidence showed "that David and Susan Black sustained property damage to their automobiles as a result of tire slashing and interior slashing."

In its April 25, 1995, order the District Court stated:

Concerning damages to the motor vehicles there was no specific evidence concerning title although there was evidence that the vehicles were owned by Susan and David Black. The jury could have been confused and awarded damages for these items to the Blacks' wholly owned corporation, Rocky Mountain Enterprises. Even if the jury was mistaken in not awarding such damages to Susan and David Black individually, the mistake is harmless. Huggins testified in the punitive damage phase of the trial that he had made restitution to Susan Black in the amount of $4,687.64 as a part of his criminal deferred prosecution agreement with the Yellowstone County Attorney. Although requested to do so this Court declined to offset that amount from the damages awarded in favor of Rocky Mountain Enterprises. If damages would have been awarded in favor of the Blacks, such damages would have been offset by the restitution. The Blacks have effectively recovered vehicle damages.

We agree with the District Court that the jury's award was not inadequate with regard to any property damages that Rocky Mountain and the Blacks are attempting to claim.

Lastly, Rocky Mountain and the Blacks contend that the jury award was inadequate

with respect to the award of $51 in punitive damages against Huggins.

Pursuant to § 27-1-221(7)(c), MCA, a district court judge reviews a jury award of punitive damages.  If, after the review, the judge determines that the jury award of punitive damages should be increased or decreased, the judge may do so.  Section 27-1-221(7)(c), MCA.  It is within the district court's discretion to increase or decrease a jury's award of punitive damages.  See Dees v. American National Fire Ins. Co. (1993), 260 Mont. 431, 861 P.2d 141; Safeco Ins. Co. v. Ellinghouse (1986), 223 Mont. 239, 725 P.2d 217.  Under § 27-1-221(7)(c), MCA, a district court judge considers the following factors set forth in § 27-1-221(7)(b), MCA, when reviewing a jury's award of punitive damages:

> (i)  the nature and reprehensibility of the defendant's wrongdoing;
> (ii)  the extent of the defendant's wrongdoing;
> (iii)  the intent of the defendant in committing the wrong;
> (iv)  the profitability of the defendant's wrongdoing, if applicable;
> (v)  the amount of actual damages awarded by the jury;
> (vi)  the defendant's net worth;
> (vii)  previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
> (viii)  potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
> (ix)  any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

Section 27-1-221(7)(b), MCA.

Upon a review of the record, it appears that the jury was properly instructed on the issue of punitive damages and made its decision after considering the evidence presented.  The District Court reviewed the award and decided to leave it intact.  Since the District Court considered the factors in § 27-1-221(7)(b), MCA, and concluded that $51 was an appropriate amount for punitive damages against Huggins, we will not disturb their decisions.  We conclude that the District Court did not abuse its discretion in upholding the jury's award of punitive damages of $51 against Huggins.

E.    Admittance of police reports regarding the Blacks' domestic disputes into evidence?

David Black argues that the District Court violated his rights to privacy by allowing into evidence investigative materials and testimony from police officers regarding domestic disturbances or domestic violence complaints involving disputes between him and his wife. David Black contends that the District Court did not make a finding that his right to privacy was outweighed by Carpet Barn's "right to know."  He also argues that the probative value of this evidence was outweighed by its prejudicial effect on the jury.

Under Rule 403, M.R.Evid., a district court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

Section 44-5-303(1), MCA, provides, in relevant part:

[D]issemination of confidential criminal justice information is restricted to criminal justice agencies, to those authorized by law to receive it, and to those authorized to receive it by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure.

A review of the trial transcript reveals that the District Court correctly exercised its discretion under Rule 403, M.R.Evid.

On February 1, 1995, the District Court held proceedings in chambers regarding the police documents on David Black. The District Court stated:

I'm required to make the in camera inspection of the documents. In making that in camera inspection I'm required to weigh in my own mind whether the constitutional right of privacy of any individuals would exceed the constitutional right of the public to know related to those files and also considering the case that I am considering. I've done that . . . .

In the context of this case -- and I'm not ruling on any admissibility of evidence issues, but in reviewing those files, I believe that two portions of the file which relates to alleged domestic abuse occurrences between David Black and Susan Black, both subsequent to the incidents that are in question in this case, but very close to the time of this case, I think they're within a year in the year 1987, it was '88, I've decided I will allow those documents to be inspected and copied by each of the parties.

However, the District Court did find that some of the information in the police file should not be disclosed. The District Court stated, "[t]here are other documents I am not allowing disclosure. I find that the right to privacy does exceed the right of the public to know."

During trial, the District Court allowed Carpet Barn to introduce evidence of the Blacks' domestic disputes.

We conclude that the District Court did not abuse its discretion in allowing this evidence. The Blacks claimed that Carpet Barn and Huggins caused them emotional distress entitling them to damages. The evidence regarding the Blacks' domestic disputes was relevant because it contradicted the Blacks' claims by showing that the Blacks' emotional distress may have been caused by factors other than the actions of the defendants.

Although the District Court did not make a written finding as required by õ 44-5-303(1), MCA, we find this error to be harmless. The District Court made its finding in chambers before both parties, stating its reasons for the disclosure of police documents regarding David Black.

F.    Exclusion of plaintiffs' expert witnesses?

Rocky Mountain and the Blacks argue that the District Court abused its discretion

by prohibiting certain expert witnesses from testifying at trial. The prohibited witnesses included Dr. Ann Adair, a Billings economist, and Dr. Ned Tranel and Dr. Sandra Lee, both crisis counselors. In its January 27, 1995, order, the District Court ruled that the plaintiffs had failed to comply with the scheduling order in respect to the disclosure of expert witnesses and granted defendants' motion in limine to exclude certain witnesses for the plaintiffs.

Our standard of review from orders granting or denying discovery is abuse of discretion. In re Marriage of Caras (1994), 263 Mont. 377, 384, 868 P.2d 615, 619. "The District Court has inherent discretionary power to control discovery and that power is based upon the District Court's authority to control trial administration." State ex rel. Guarantee Ins. Co. v. District Court of the Eighth Judicial Dist. (1981), 194 Mont. 64, 67-68, 634 P.2d 648, 650; see also Montana Rail Link v. Byard (1993), 260 Mont. 331, 337, 860 P.2d 121, 125.

The record reveals that the last scheduling order dated January 18, 1994, set the trial date for January 23, 1995, and required plaintiffs to disclose all expert witnesses at least twelve weeks before trial. Therefore, the plaintiffs' witness disclosures were due before October 30, 1994. However, on December 28, 1994, plaintiffs attempted to file supplemental designations of expert witnesses, one month before the trial date.

The District Court ruled that the plaintiffs' disclosures under Rule 26(b), M.R.Civ.P., were inadequate and untimely. We conclude that the District Court did not abuse its discretion; therefore, we will not disturb its ruling relating to disclosure of experts. See J.L. v. Kienenberger (1993), 257 Mont. 113, 119, 848 P.2d 472, 476.

G.    Improper argument?

Plaintiffs argue that the defendants improperly commented, in argument, to the jury that there was no evidence from any psychologist, or any other expert, that would support the plaintiffs' case. Also, plaintiffs contend that defendants improperly commented upon the absence of any evidence or testimony from Susan Black. Plaintiffs suggest that it was unfair for the defendants to comment upon these issues in front of the jury because they had obtained rulings from the District Court excluding both the testimony of the experts and the use of Susan Black's deposition.

We find the plaintiffs' argument as to improper argument regarding the expert witnesses unpersuasive. As discussed above, it was the plaintiffs' failure to properly disclose their expert witnesses as required by the District Court. Thus, the defendants could properly comment on their lack of expert witnesses.

As stated above, the failure of the District Court to allow the deposition of Susan

Black to be entered into evidence was harmless error.  We conclude that any argument made by the defendants relating to the absence of any evidence or testimony from Susan
Black did not prejudice the plaintiffs in this trial.

ISSUE 2

Did the District Court err in denying Rocky Mountain and the Blacks' memorandum of costs as untimely?

Section 25-10-501, MCA, states:

> The party in whose favor judgment is rendered and who claims his costs must deliver to the clerk and serve upon the adverse party, within 5 days after the verdict or notice of the decision of the court or referee or, if the entry of the judgment on the verdict or decision be stayed, then before such entry is made, a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified by the oath of the party, his attorney or agent, or the clerk of his attorney, stating that to the best of his knowledge and belief the items are correct and that the disbursements have been necessarily incurred in the action or proceeding.

The jury verdict was signed and filed on the compensatory damage issue on February 6, 1995.  The jury verdict on the issue of punitive damages was signed and filed on February 7, 1995.

On February 21, 1995, Rocky Mountain filed a motion to tax costs with a memorandum of costs that was not verified.  After objection filed by Carpet Barn, plaintiffs refiled the motion to tax costs with a verified memorandum of costs on February
27, 1995. On March 7, 1995, the District Court struck plaintiffs' memorandum of costs as untimely because it was not filed within five days of the verdict.

Plaintiffs argue that although the judgments were entered on February 6 and 7, there was uncertainty as to the form of the judgment and whether an offset should be allowed against the $35,000 compensatory damage judgment.

We determine that the plaintiffs' memorandum of costs was properly stricken. Although, at the time judgment was rendered, the District Court stated that there were
still issues regarding the amount and form of the judgment to be resolved, the District
Court never issued an order staying the entry of the judgment.  Thus, to claim costs under õ 25-10-501, MCA, the plaintiffs had five days from the date of the jury verdict
to file and serve upon the adverse party a verified memorandum of costs.  See R.H. Grover, Inc. v. Flynn Ins. Co. (1989), 238 Mont. 278, 777 P.2d 338.  In this case, the
plaintiffs failed to file a verified memorandum of costs within five days as required under
õ 25-10-501, MCA.

We conclude that the District Court was correct in denying plaintiffs' memorandum
of costs as untimely.

ISSUE 3

Did the District Court abuse its discretion in imposing sanctions against plaintiffs'
counsel?

At the close of trial, Carpet Barn filed a motion for sanctions against plaintiffs and plaintiffs' counsel, Robert L. Stephens. The District Court awarded attorney fees in the amount of $500, under the authority of õ 37-61-421, MCA, which provides:

An attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

It is within the discretion of a district court to award costs and attorney fees under õ 37-61-421, MCA. See Tigart v. Thompson (1990), 244 Mont. 156, 796 P.2d 582.

Plaintiffs' counsel argues that the District Court abused its discretion in sanctioning him for two reasons. First, counsel has a duty to zealously and vigorously represent his client's interests. Second, the imposition of sanctions has a chilling effect on the legitimate zeal of counsel, especially when penalties are dispensed after any opportunity for remedial measures by counsel has passed. In light of these principles, plaintiffs' counsel contends that a review of the record will not support the findings of the District Court.

The District Court made numerous findings about the conduct of plaintiffs' counsel during the trial. In its order dated March 7, 1995, the District Court provided examples and reasons to justify the imposition of sanctions:

For example after a few minutes of Mr. Stephens' opening statement trial was recessed at which time the Court again reviewed its rulings on preliminary matters and attempted to establish parameters for counsel in handling the remainder of trial. These rulings were ignored by Mr. Stephens to a substantial degree.

. . . .

At least once and perhaps more than once Mr. Stephens in questioning or in merely making statements during the course of the trial was cut off in mid-sentence by the Court when an objection was sustained. He continued to finish the improper statement in front of the jury. The final and most blatant improper act of Mr. Stephens occurred at the very end of trial. This occurred in his rebuttal argument on the issue of punitive damages concerning Huggins. In the rebuttal argument, Mr. Stephens made a statement to the jury to the effect that everyone knew what was going on here, that a diminution of a punitive award would be to the benefit of Carpet Barn and that Carpet Barn was covered by liability insurance to pay any losses in the case. The Court immediately terminated the argument and directed the jury to deliberate. It is difficult to say that statement was prejudicial since the punitive award was only in the amount of $51.00. At

the time of the statement the amount of punitive damages to be awarded against Huggins was the only remaining issue. The statement was clearly improper. Mr Stephens claims that the matter had been opened in the punitive arguments by [opposing counsel] in arguing the difference between a punitive award against a wealthy corporation, for example State Farm Insurance Company, as opposed to an individual like Huggins without assets. This is a lame excuse for Mr. Stephens' improper statements. Mr. Stephens knows that the matter of liability insurance coverage cannot be mentioned in a case like this before the jury.

. . . .

The Court is of a view that Mr. Stephens' conduct did increase the trial time inappropriately in attempting to admit inadmissible evidence. It is difficult to estimate the additional time but conservatively Mr. Stephens' conduct probably at lease increased the trial time by one-half day

The District Court concluded by stating that "the conduct of Mr. Stephens in this case

cannot be condoned."

After a review of the record and the trial transcript, we conclude that it was within

the District Court's discretion to award costs and attorney fees in the amount of $500 to

Carpet Barn pursuant to õ 37-61-421, MCA. We find no abuse of discretion here.

                              ISSUE 4

Did the District Court err in granting summary judgment against plaintiffs on the

claim of civil conspiracy?

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. In re Estate of Lien (1995), 270 Mont. 295, 298, 892 P.2d 530, 532. Such a review requires that we first determine whether the moving party met its burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. See Estate of Lien, 270 Mont. at 298, 892 P.2d at 532.

Plaintiffs argue that the District Court erred in granting summary judgment to the

Pierce defendants on the civil conspiracy issue.

To prove civil conspiracy the following elements are required: (1) two or more persons, and for this purpose, a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. Grenz v. Medical Management Northwest, Inc. (1991), 250 Mont. 58, 62, 817 P.2d 1151, 1154; Duffy v. Butte Teachers' Union No. 332 (1975), 168 Mont. 246, 251, 541 P.2d 1199, 1202.

The District Court stated "there is probably sufficient evidence of elements 1, 2,

4, and 5 as quoted in Grenz. There is a failure on the part of the plaintiffs to raise a
genuine issue of material fact concerning element 3 'a meeting of the minds on the object
or course of action.'"

This Court has reviewed the motions, depositions, and affidavits that were filed with respect to the civil conspiracy issue. In our review, we have also considered the evidence that the plaintiffs allege was untimely produced by the defendants and constituted the basis for their motion for reconsideration of summary ruling on civil conspiracy, or alternatively motion for Rule 54 certification.

This Court concludes that the District Court was correct in granting summary judgment to all defendants on the civil conspiracy issue. We agree with the District Court's conclusion that the plaintiffs had failed to establish a genuine issue of material fact concerning whether "a meeting of the minds on the object or course of action" was reached between Huggins and any other of the Pierce defendants.

CROSS-APPEAL

ISSUE 1

Did the District Court err in failing to dismiss the complaint pursuant to Rule 41(e), M.R.Civ.P.?

Carpet Barn cross-appeals, challenging the District Court's refusal to dismiss the plaintiffs' claims under Rule 41(e), M.R.Civ.P.

The District Court declined to dismiss the defendants, concluding that, any defect in serving the summons upon the Pierce defendants was cured by serving each of the defendants with the original summons which was issued within one year of the commencement of the action. Our standard in reviewing a district court's conclusion of law is to determine whether the interpretation of law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Rule 41(e), M.R.Civ.P., provides as follows:

Failure to serve summons. No action heretofore or hereafter commenced shall be further prosecuted as to any defendant who has not appeared in the action or been served in the action as herein provided within 3 years after the action has been commenced, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named in the complaint as a party or not, unless summons shall have been issued within 1 year, or unless summons issued within one year shall have been served and filed with the clerk of the court within 3 years after the commencement of said action, or unless appearance has been made by the defendant or defendants therein within said 3 years. When more than one defendant has been named in an action, the action may within the discretion of the trial court be further prosecuted against any defendant who has appeared within 3 years, or upon whom summons which has been issued within 1 year has been served and filed with the clerk within 3 years as herein required.

The purpose of Rule 41(e), M.R.Civ.P., is to ensure that actions are timely prosecuted. First Call, Inc. v. Capitol Answering Service, Inc. (1995), 271 Mont. 425, 427, 898 P.2d 96, 98.  The rule requires dismissal of an action where summons is not issued within one year of the commencement of the action.  Indeed, we have previously stated that the failure to issue summons within that time frame entitles a defendant to dismissal.  Sooy v. Petrolane Steel Gas, Inc. (1985), 218 Mont. 418, 423-24, 708 P.2d 1014, 1018.

In this case, Rocky Mountain and the Blacks filed their original complaint against the Pierce defendants and Huggins on October 21, 1988.  The summons naming the Pierce defendants as parties was issued on the same day.  A subsequent summons was issued on October 23, 1989, but it was not served.  Yet another summons was issued on February 28, 1990, which was served on the Pierce defendants sometime in March 1990.  Upon receipt of this summons, the Pierce defendants filed a motion to dismiss and supporting brief based on Rule 41(e) on March 27, 1990, contending that they were served with a summons that had been issued more than one year after the filing of their complaint.

After the Pierce defendants' motion to dismiss was filed, the plaintiffs attempted to cure any deficiencies in service of summons by serving the original summons issued on October 21, 1988.  That summons was served on the Pierce defendants on April 16, 1990.

On September 17, 1990, the District Court ruled on the motion to dismiss.  The District Court stated that at the time the original motion to dismiss was filed, the Pierce defendants had been served with a summons, dated February 28, 1990, that had been issued more than one year from the commencement of the action.  At that time, the motion to dismiss had merit.  However, the District Court ruled that the defect in serving the February 28, 1990, summons was cured by serving the Pierce defendants with the original October 21, 1988, summons that had been issued on the date this action commenced.

Carpet Barn argues in its cross-appeal that the District Court erred in failing to dismiss this action.  It contends that it could not be "re-served" with the original summons after it had appeared in court and filed its motion to dismiss pursuant to Rule 41(e) based upon the error of being served with the subsequent summons. Carpet Barn relies on First Call, 271 Mont. 425, 898 P.2d 96, for the proposition that the District Court should have granted their motion and that the dismissal should have been with prejudice.

This Court concludes that the District Court did not err in denying the Pierce defendants' motion to dismiss pursuant to Rule 41(e).  In First Call, we held that the failure to serve a summons within the required three years meant that the complaint must be dismissed with prejudice.  First Call, 271 Mont. at 428, 898 P.2d at 98.  However, in the case at bar, the original summons was served upon the Pierce defendants within

the requisite three years.  We determine that the issuing of subsequent summonses, did

not serve to nullify the original summons.

ISSUE 2

Did the District Court err in not granting either the defendants' motion for summary judgment or later motion for a directed verdict on plaintiffs' claims based on

vicarious liability and negligence?

As stated above, we review a district court's grant of summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. Estate of Lien,

270 Mont. at 298, 892 P.2d at 532.

A directed verdict is proper only when there is a complete absence of any evidence

which would justify submitting an issue to a jury, and all inferences which can be drawn

from the evidence must be considered in a light most favorable to the opposing party.

Pierce v. ALSC Architects, P.S. (1995), 270 Mont. 97, 107, 890 P.2d 1254, 1260 (citing

Jacques v. Montana National Guard (1982), 199 Mont. 493, 649 P.2d 1319).  A district court must deny a motion for a directed verdict if substantial conflicts in the evidence

exist.  Fox Grain and Cattle Co. v. Maxwell (1994), 267 Mont. 528, 533, 885 P.2d 432, 435 (quoting Simchuk v. Angel Island Community Ass'n (1992), 253 Mont. 221, 225, 833 P.2d 158, 160).

Carpet Barn argues that the District Court erred by not granting its motion for summary judgment on the plaintiffs' claims based on vicarious liability and negligence. Specifically, they argue that there was no evidence that the criminal conduct of Huggins

was in furtherance of his employer, Carpet Barn, and, thus, Carpet Barn could not be held liable under the theory of respondeat superior.

After a review of the evidence, this Court concludes that the District Court did not

err in denying the defendants' motions. The District Court cited the following facts regarding Carpet Barn's possible liability for Huggins' actions: Huggins met Susan Black

through business; Huggins discussed the Blacks with Jon Pierce; some of the tortious acts

occurred during business hours from Carpet Barn; and Huggins understood that his acts could harm Rocky Mountain's business activities.  The District Court concluded that there

was a genuine issue of material fact for the jury concerning whether Huggins acted within

the scope of his employment.

We conclude that based on the evidence, the District Court was correct in denying

defendants' motions for summary judgment and directed verdict on plaintiffs' claims based on vicarious liability and negligence.

Affirmed.

/S/   JIM REGNIER

We Concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   TERRY N. TRIEWEILER
/S/   W. WILLIAM LEAPHART
/S/    JEFFREY M. SHERLOCK
          District Court Judge,
     sitting for Justice Karla M. Gray

Justice James C. Nelson dissents.

     I would not reach the issues addressed on appeal.  Rather, I would reverse and order Plaintiffsþ cause of action dismissed on the basis of the issue raised on cross-appeal.

I would hold that the District Court erred in not dismissing Plaintiffs' action with prejudice on the basis of the Pierce Defendants' motion to dismiss under Rule 41(e), M.R.Civ.P.

     As the District Court stated and as the majority opinion notes, at the time their original motion to dismiss was filed, the Pierce Defendants had not been served with a summons that had been issued within one year of the commencement of the action. Their motion was, thus, clearly meritorious. Accordingly, at that point in time, under the unambiguous requirements and plain language of Rule 41(e), as subsequently interpreted in our decision in First Call v. Capitol Answering Serv., Inc. (1995), 271 Mont. 425, 898 P.2d 96,  Plaintiffs' complaint should have been dismissed with prejudice--i.e., never to be prosecuted further. First Call, 898 P.2d at 98.   In allowing Plaintiffs to cure their obvious Rule 41(e) violation by re-serving Defendants with the original summons, (an action that was, in itself, a nullity) the District Court deprived the Pierce Defendants of their right to take advantage of the rule and to a final dismissal of Plaintiffs' complaint.

Moreover, the trial court allowed Plaintiffs to do exactly what Rule 41(e) specifically prohibits--to further prosecute a lached lawsuit.  First Call, 898 P.2d at 98.

     Similarly, in Sinclair v. Big Bud Mfg. Co. (1993), 262 Mont. 363, 865 P.2d 264, we held that Rule 41(e) does not allow the District Court discretion to allow the further prosecution of an action where summons is not issued within one year of the commencement of the suit and that the mandatory language of the rule requires dismissal.

Sinclair, 865 P.2d at 266-67. In that case we reversed the District Court for doing, in
substance, what the court did here. We stated:

> Notwithstanding the failure to issue the summonses timely, the District Court determined that it could allow the action to proceed because the non-BBMC defendants had made an appearance. It is true that an action may be further prosecuted under Rule 41(e), M.R.Civ.P., if a defendant appears within three years of the commencement of the action even though summons has not been timely issued. However, the only appearance made by the non-BBMC defendants prior to the court's ruling was the Rule 12(b), M.R.Civ.P., motion to dismiss asserting the Rule 41(e), M.R.Civ.P., bar to further proceedings. Rule 41(e), M.R.Civ.P., specifically allows a party to move for dismissal of the action and requires the district court to do so if summons was not properly issued. Thus, the non-BBMC defendants' motion to dismiss does not serve as a basis for further prosecution of the action. [Emphasis added.]

Sinclair, 865 P.2d at 267.

Neither the unambiguous language of Rule 41(e) nor our decisions in Sinclair or First Call provide any mechanism for "curing" a Rule 41(e) defect once the defendant has
moved for dismissal. At that point, the obligation of the court is simply to dismiss with
prejudice.Following briefing in the case at bar, we handed down our decision in
Yarborough v. Glacier County (Mont.1997), ___ P.2d ___, 54 St.Rep. 1274. In that
case we reversed a decision of the trial court granting the defendant's Rule 41(e) motion
to dismiss. That case is distinguishable and is limited to its facts; it does not support the
majority opinion here. In Yarborough, the plaintiff had a summons issued the same day
she filed her complaint, July 8, 1993. The defendant declined to acknowledge service of
the summons and complaint mailed within one year of the commencement of the action.
The original summons was subsequently lost. Over one year from the filing of the
complaint, plaintiff had the clerk of court issue an identical "duplicate" of the original
summons. This duplicate summons was titled as such and bore the following statement
at the bottom prior to the clerk of court's signature line: "NOTE: DUPLICATE
SUMMONS ISSUED this 23rd day of June, 1995." This duplicate summons was
personally served on the defendant. Yarborough, 54 St.Rep. at 1274. On those facts, we
held that the plaintiff had complied with the substance and literal purpose of Rule 41(e).
Yarborough, 54 St. Rep. at 1275. Significantly, Yarborough did not distinguish, much less overrule, First Call or Sinclair.

In the instant case, the Pierce Defendants were not served with a duplicate of the
original summons issued October 21, 1988, nor were they served with the summons
issued a year later on October 23, 1989. Rather they were served with a brand new
summons issued February 28, 1990. Nothing on this summons indicates that it was

"duplicate" of the original that was lost.  Clearly, the February 28, 1990 summons was
a new summons that was not issued within one year of the commencement of the action
as required by Rule 41(e); First Call and Sinclair control; the District Court erred in not
granting the Pierce Defendants' Rule 41(e) motion to dismiss at the time the motion was
made.

  I dissent.

/S/  JAMES C. NELSON